**BEFORE THE UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: PARAGARD IUD<br>PRODUCTS LIABILITY LITIGATION | MDL No. _____ |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR TRANSFER OF ACTIONS TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1407 AND JPML RULE 7.2 FOR COORDINATED AND CONSOLIDATED PRETRIAL PROCEEDINGS**

**TABLE OF CONTENTS**

I. FACTUAL BACKGROUND ................................................................................................ 1

II. ARGUMENT .................................................................................................................... 3

   A. The Standard for Transfer and Coordination ................................................................ 3

      1. Transfer and Coordination of the Actions is Appropriate and Necessary .............. 4

      2. The ParaGard Cases Involve Common Questions of Fact ........................................ 6

      3. Pretrial Centralization Will Enhance the Litigation as a Whole ............................ 7

      4. Pretrial Centralization Will Promote the Just and Efficient Conduct of These Cases ................................................................................................................................ 8

      5. COVID-19 Implications and Considerations ........................................................... 10

   B. The Central District of California is the Most Suitable Venue for the MDL ............ 11

   C. Alternatively, the Northern District of Georgia Is A Suitable Venue for the MDL . 12

   D. Alternatively, the Western District of Missouri Is Also A Suitable Venue for the MDL .................................................................................................................................... 14

III. CONCLUSION ............................................................................................................... 15

Pursuant to 28 USC § 1407 and Rule 7.2(a) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Moving Plaintiff respectfully submits this memorandum of law in support of her motion for transfer and coordination for pretrial purposes of all currently filed cases identified in the Schedule of Actions ("Actions"), as well as any cases subsequently filed involving similar facts or claims ("tag along cases"), to the United States District Court for the Central District of California. Alternatively, the Northern District of Georgia or the Western District of Missouri are appropriate jurisdictions for transfer.

There are currently at least fifty-five (55) actions pending in twenty-nine (29) different judicial districts in the United States alleging similar wrongful conduct on the part of Defendants which resulted in similar injuries. Likewise, because of the scope of Defendants' sales of ParaGard® Intra-uterine Device (hereinafter "ParaGard"), it is likely that hundreds of other actions will be filed in jurisdictions throughout the United States. Transfer for consolidation and coordination is proper because each of these Actions and tag along cases arise out of the same or similar nucleus of operative facts, arise out of the same or similar alleged wrongful conduct, will involve the resolution of the same or similar questions of fact and law, and discovery will be substantially similar and involve many of the same documents and witnesses.

I. **FACTUAL BACKGROUND**

The ParaGard T380A is an IUD that was created by Duramed Pharmaceuticals, Inc., in 1982. ParaGard is an FDA regulated birth control and was owned by generic drug manufacturer Teva Pharmaceuticals USA, Inc., from 2009 to 2017. ParaGard has a propensity to break at the arms upon explant resulting in serious injuries.

The ParaGard T-380A IUD was launched onto the market in 1984 and was initially approved for up to four (4) years of continuous use. In 1989, ParaGard was approved for up to

six (6) years of continuous use and in 1991, ParaGard was approved for up to eight (8) years of use. In 1994, ParaGard was approved for up to ten (10) years and remains to date, approved for up to ten (10) years of continuous use. ParaGard is an intrauterine device placed into the uterus to prevent conception. However, it is regulated as a drug.

The ParaGard IUD is a T-shaped plastic frame made of polyethylene and barium sulfate that is inserted into the uterus. Copper wire coiled around the device produces an inflammatory reaction that is toxic to sperm and egg. A monofilament polyethylene thread is tied through the tip, resulting in two white threads, which aid in the detection and removal of the device. The monofilament strings are composed of the same material as common fishing line. Monofilament is a single fiber of plastic. The type of copper used is undisclosed and has been redacted from all NDA applications.

ParaGard is implanted by either dilating the uterus and inserting the ParaGard into the uterine cavity through an implant tool or implanted with the tool without need of dilation. This is patient specific. Removal of the device requires a visit to a healthcare provider. To remove the device, physicians are instructed to locate the strings and to pull gently until the ParaGard is expelled from the uterus. The arms of the ParaGard are supposed to fold upward at the joint to aid in the removal. Often, the arm(s) will break at the joint and remain in the uterus after the removal. ParaGard has a propensity to break upon removal causing complications and injuries including but not limited to surgeries to remove the broken piece of the device, infertility and pain.

Between 2005 and 2015, Teva Defendants came into possession of "newly acquired evidence" in the FDA Maude database which warranted changes to the ParaGard label, yet failed to adequately communicate and/or warn consumers, the FDA and/or doctors and the medical

community of the newly acquired information and risks. Since 2010, the FDA has received over 1600 reports of ParaGard breakage, with over 700 classified as serious. At no time prior to Fall 2019 did Defendants take any action to inform patients, physicians or the public about the problems with ParaGard and its propensity to break upon removal causing significant injuries.

## II. ARGUMENT

### A. The Standard for Transfer and Coordination

This Panel considers the following factors when determining whether to authorize transfer and consolidation of multidistrict actions: (1) one or more common questions of fact are pending in different districts; (2) a transfer would serve the convenience of parties and witnesses; and (3) a transfer would promote the just and efficient conduct of the actions. 28 U.S.C. § 1407(a). The purpose of the multidistrict litigation process is to "eliminate the potential for contemporaneous pretrial rulings by coordinating district and appellate courts in multidistrict related civil actions." *In re: Multidistrict Private Civ. Treble Damages Litig.*, 298 F. Supp. 484, 491-92 (J.P.M.L. 1968). Consolidation is especially important in multidistrict litigations where "the potential for conflicting, disorderly, chaotic" action is greatest. *Id*. at 493.

Multidistrict litigation is designed "to 'promote the just and efficient conduct' of 'civil actions involving one or more common questions of fact' that are pending in different districts." *In re Phenylpropanolamine (PPA) Products Liability Litigation,* 460 F.3d 1217, 1229 (9th Cir. 2006), *quoting* 28 U.S.C. § 1407(a)). Upon a motion for transfer, the Panel "analyzes each group of cases in light of the statutory criteria and the primary purposes of the MDL process to determine whether transfer is appropriate." *In re PPA Products Liability Litigation,* 460 F. 3d at 1230. To that end, it considers factors including "the progress of discovery, docket conditions, familiarity of the transferee judge with the relevant issues, and the size of the litigation." *Id.*

3

*citing* Multidistrict Litigation Manual § 5.16. On the specific issue of whether to centralize litigation in a single district, the Panel considers the convenience of the parties and witnesses, the number of related actions, and the complexity of common questions of fact.

In this instance, transfer, coordination and consolidation is appropriate because many common questions of fact and law exist, including but not limited to the following: whether ParaGard was defectively designed; whether the ParaGard lots at issue contained manufacturing defects; whether ParaGard was marketed with an adequate label; whether Defendants conducted adequate pharmacovigilance of ParaGard; and whether Defendants engaged in negligent conduct resulting in Plaintiffs' injuries.

### 1. Transfer and Coordination of the Actions is Appropriate and Necessary

The ParaGard cases are well suited for centralization under Section 1407. Though filed in different jurisdictions within the federal court system, these cases are closely related: they share the same Defendants, the same basic theory of liability, and the same basic factual allegations. All the cases will involve the same core discovery, fact witnesses, and will likely include the same general liability and causation experts. Moreover, none of these cases have made any substantial progress toward trial, making this the ideal time to order transfer. Most cases are either in the early stages of discovery or have not yet commenced discovery. In many of the cases, the parties are still contesting who are the proper defendants in the litigation. As such, transfer and coordination would promote efficiency and avoid duplicative and inconsistent motions and rulings and allow one judge to continue advancing this litigation in ways that are useful and convenient to all parties.

Further, the Panel has frequently recognized coordination under § 1407(a) is particularly appropriate in pharmaceutical product liability cases. *See generally In Re: Diet Drugs*

*(Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation, MDL No. 1203 (E.D.PA); In Re: Rezulin Products Liability Litigation, MDL No. 1348 (S.D.NY); In Re: Propulsid Products Liability Litigation, MDL No. 1355 (E.D. LA); In Re: Serzone Products Liability Litigation, MDL No. 1477 (S.D. WV); In Re: Meridia Products Liability Litigation, MDL No. 1481 (N.D. OH); In Re: Prempro Products Liability Litigation, MDL No. 1507 (E.D. AR); In Re: Viagra Products Liability Litigation, MDL No. 1727 (D. MN); In Re: Zyprexa Products Liability Litigation, MDL No. 1596 (E.D. NY); In Re: Ephedra Products Liability Litigation, MDL No. 1598 (S.D. NY); In Re: Phenylpropanolamine (PPA) Products Liability Litigation, MDL No. 1407 (W.D. WA); In Re: Accutane Products Liability Litigation, MDL No. 1626 (NJ Superior Court); In Re: Vioxx Marketing, Sales Practices and Products Liability Litigation, MDL No. 1657 (E.D. LA); In Re: Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation, MDL No. 1699 (N.D. CA); In Re: Aredia and Zometa Products Liability Litigation, MDL No. 1760 (M.D. TN); In Re: Seroquel Products Liability Litigation, MDL No. 1769 (M.D. FL); In Re: Fosamax Products Liability Litigation, MDL No. 1789 (S.D. NY); In Re: Mirapex Products Liability Litigation, MDL No. 1836 (D. MN); In Re: Levaquin Products Liability Litigation, MDL No. 1943 (D. MN); In Re: Darvocet, Darvon and Propoxyphene Products Liability Litigation, MDL No. 2226 (E.D. KY).* These cases all share one core fact pattern: namely, a single component that caused a specific type of harm. This case, like the long list of cases cited above is no different. Specifically, this case involves a similar harm predicated upon a similar mechanism of injury (i.e., injury resulting from the ParaGard arm breaking).

For these reasons, transferring these cases pursuant to 28 U.S.C. § 1407 would enhance the convenience and efficiency of this litigation. Failing to transfer would almost certainly lead

5

to inconsistent and conflicting rulings-particularly with respect to discovery and squander judicial resources in several judicial districts. Thus, the Panel should issue an order transferring all the ParaGard Cases to one judicial district for pretrial coordination or consolidation.

## 2. The ParaGard Cases Involve Common Questions of Fact

The threshold requirement of § 1407 is that there be questions of fact common to the cases for which MDL treatment is sought. This requirement is satisfied here. The claims in the ParaGard cases each arise from the same course of conduct. Among the numerous common questions of fact are:

a. Whether and to what extent ParaGard has a propensity to break upon removal resulting in significant or severe injuries;

b. When Defendants first learned of the connection between the ParaGard and the increased risk of ParaGard arm breakage;

c. Whether ParaGard is defective in design because of its propensity to break resulting in significant or severe injuries;

d. Whether ParaGard was defective and unreasonably dangerous when used by Plaintiffs because any benefits associated with the product are significantly outweighed by the risks associated with use of ParaGard;

e. Whether Defendants failed to warn prescribers about the increased risk of breakage associated with the use of ParaGard;

f. Whether ParaGard was sold without adequate warnings of the increased risk of breakage resulting in significant or severe injuries;

g. Whether Defendants negligently, recklessly or intentionally misrepresented the risk that ParaGard arms breakage resulting in significant and severe injury; and

    h.    Whether Defendants knowingly, recklessly, or negligently concealed from physicians and/or consumers the increased risk of ParaGard arm breakage resulting in injury.

Given the commonality of factual issues in each of the related cases, MDL treatment is appropriate. *See e.g., In re Accutane Prods. Liab. Litig*., 343 F.Supp. 1382, 1383 (J.P.M.L. 2004) ("The actions . . . present common questions of fact concerning, inter alia, i) the development, testing, manufacturing, and marketing of Accutane, and ii) defendants' knowledge concerning the drug's possible adverse effects.").

### 3. Pretrial Centralization Will Enhance the Litigation as a Whole

Transfer is appropriate when it would enhance the convenience of the litigation. *See e.g., In re Library Editions of Children's Books*, 297 F. Supp. 385, 386 (J.P.M.L. 1968) ("[T]he Panel must weigh the interests of all the plaintiffs and all the defendants, and must consider multiple litigation as a whole in the light of the purposes of the law."). Here, pretrial transfer will undoubtedly ease the burdens on all involved.

As an initial matter, it is important to note all these cases are in their early stages – little motion practice has taken place and to the best of the undersigned's knowledge, limited discovery has occurred. Therefore, it is the optimal time for transfer.

Additionally, both Defendants and Plaintiffs stand to benefit from pretrial centralization. Pretrial transfer will reduce the burdens of discovery and costs significantly for Defendants. Similarly, consolidation will permit Moving Plaintiff's counsel to coordinate their efforts and share the pretrial workload amongst various plaintiffs' counsel. The Panel has previously endorsed this rationale noting, "[P]rudent counsel will combine their forces and apportion the workload in order to streamline the efforts of the parties and witnesses, their counsel and the judiciary, thereby effectuating an overall savings of case and a minimum of inconvenience to all

concerned." *See e.g. In re Baldwin-United Corp. Litig.*, 581 F.Supp 739, 741 (J.P.M.L. 1984). Consolidation of these cases will effectuate this purpose.

Pretrial centralization will also allow Defendants to concentrate its attention and energy on one forum, rather than numerous federal jurisdictions throughout the country. As a result, Moving Plaintiff anticipates that Defendants will be able to move quickly and effectively to the transfereree court and through discovery, enhancing the overall efficiency of the litigation. *See In re Apple iPhone 3G Prod. Liab. Litig.*, 630 F. Supp. 2d 1382, 1383 (J.P.M.L. 2009) (noting efficiency obtained through MDL process). Finally, pretrial transfer will reduce the burden on witnesses – most of whom are likely Defendants' employees, by substantially cutting down costly and time-consuming travel, duplicative testimony, and discovery. *See e.g., In re Allstate Ins. Co. Underwriting and Rating Practices Litig.*, 206 F.Supp.2d 1371, 1372 (J.P.M.L. 2002).

Given that each of the cases arise from a common core set of factual allegations, counsel for plaintiffs will invariably seek discovery from the same Defendants and witnesses relating to the development, testing, manufacture, marketing, and sale of ParaGard. MDL treatment will enable a single court to establish a pretrial program that will minimize the inconvenience and expenses of redundant and duplicative discovery, which is precisely the purpose of transfer and coordination under § 1407. *See e.g., In re Accutane*, 343 F. Supp. 2d at 1383 ("Centralization under Section 1407 is necessary in order to eliminate duplicative discovery, prevent inconsistent rulings, and conserve the resources of the parties, their counsel, and the judiciary."). In short, transferring ParaGard cases for pretrial coordination or consolidation will make this litigation far more efficient and convenient for all involved.

### 4. Pretrial Centralization Will Promote the Just and Efficient Conduct of These Cases

Fairness and efficiency will be furthered in this litigation by a single centralized and

coordinated pretrial program, which will avoid duplicative discovery and inconsistent pretrial rulings, and will conserve the resources of the parties, their counsel and the judiciary. *See In re Levaquin Prods. Liab. Litig.*, 560 F. Supp. 2d 1384 (J.P.M.L. 2008); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.,* 398 F. Supp. 2d 1371 (J.P.M.L. 2005). This risk is very real and will likely occur as motions are filed and courts set trial and discovery schedules. There are currently fifty-five (55) cases pending in twenty-nine (29) different district courts involving several different plaintiffs' law firms.

Coordinated discovery will benefit both Plaintiffs and Defendants. Rather than conducting general discovery in fifty-five (55) different actions in twenty-nine (29) different district courts, depositions of key witnesses can be coordinated and completed once. Additionally, document productions can be reduced to a single coordinated, central location where all plaintiffs can have access. Being able to streamline the work and coordinate efforts amongst plaintiffs' counsel will serve the interests of justice. *See In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 173 F. Supp. 2d 1377, 1379 (J.P.M.L. 2005) ("it is most logical to assume that prudent counsel will combine their forces and apportion their workload in order to streamline the efforts of the parties and witnesses, their counsel and the judiciary, thereby effectuating and overall savings of cost and minimum of inconvenience to all concerned"). One court overseeing these actions instead of 29 different courts will allow the judiciary to preserve its resources.

Coordinated discovery will also help the plaintiffs in these cases. Instead of more than a dozen different law firms pursuing different strategies for the litigation and engaging in duplicative discovery and motion practice, a coordinated team of attorneys can pursue the claims in one court, before one judge, preserving the plaintiffs' resources and allowing the attorneys to

work together in common to further these cases.

If transfer is denied in this litigation, these cases will proceed on independent tracks, requiring duplicative discovery, including repeated depositions of the same corporate personnel. Both Plaintiffs and Defendants would benefit from centralization and the economies of scale that it would bring. Transfer would also avoid that danger of inconsistent rulings and result in economy of judicial resources.

Should the Panel determine transfer is proper, it should centralize these cases in the United States District Court Central District of California in front of Judge John A. Kronstadt.

### 5. COVID-19 Implications and Considerations

Moving Plaintiff is aware the COVID-19 Pandemic has created new and different considerations for the transfer of a coordinated litigation. Although travel and courthouse access is currently limited, attorneys and courthouses across the country have adapted and employed technology to keep the wheels of justice turning. In prior years, hearing access via telephone was at times, noisy, capped at a certain number of attendees and limited. Now, courts are holding lengthy hearings, mediations and even trials remotely. People across the entire country and internationally are making significant strides in working remotely, including utilizing new and improved technology. As we navigate this new landscape, these cases will benefit from one judge assisting the Parties in navigating the intricacies of COVID-19 guidelines as they relate to litigation such as remote deposition protocols and hearing protocols. It is, perhaps, more important than ever to limit duplicative depositions and interactions.

At the outset, transfer and coordination will not require significant travel or in-person interactions, as courts, attorneys, and other litigation participants have adapted. However, once COVID-19 restrictions ease, a convenient location will remain an important consideration.

Importantly, even after normalcy resumes, the benefits learned during Covid-19 will be valuable lessons to be applied, and in tandem with transfer and coordination, will further promote efficiency.

### B. The Central District of California is the Most Suitable Venue for the MDL

Once the Panel determines that centralization is appropriate it then "looks for an available and convenient transfer forum." Federal Judicial Center, *Manual for Complex Litig.* § 22.33, at 367 (4th Ed. 2011). Transfer of the ParaGard cases to the Central District of California would best serve the purposes of 28 U.S.C. §1407. At this moment, There is no one jurisdiction where the litigation is further advanced than another. The Central District of California is a suitable venue for the pretrial proceedings of the ParaGard Litigation. The Panel generally selects a forum that:

> (1) is not overtaxed with other MDL cases, (2) has a related action pending on its docket, (3) has a judge with some degree of expertise in handling the issues presented, and (4) is convenient to the parties.

*Id.* The Central District of California is not overtaxed with other MDL cases. At the time of filing this Motion, there are four (4) MDLs pending in the Central District of California spread among the twenty-six (26) District Judges housed there. There are currently four related actions filed in the Central District of California pending before the Honorable John A. Kronstadt. Judge Kronstadt is an experienced jurist, having been a judge for nearly 18 years between state and federal courts. Judge Kronstadt also has MDL experience, with one MDL pending in front of him, MDL 2905, *IN RE: ZF-TRW Airbag Control Units Products Liability Litigation.*

In terms of convenience to the parties, the Central District of California is certainly a convenient forum. One of the Defendants, The Cooper Companies, is based in California.[1] Los

---

[1] At the time of this filing, there are pending motions to dismiss The Cooper Companies.

11

Angeles, the second largest city in the United States, is equipped with one of the busiest airports in the world, is a hub of major airlines, and there are scores of hotels nearby the courthouse. Los Angeles is certainly a convenient location.

Another factor in favor of the Central District of California is its large and diverse population. Los Angeles is one of the most populous cities in the United States and one of the most, if not the most, racially and ethnically diverse cities in the United States. Los Angeles thus provides for a large and diverse jury pool, adequately representative of the country.

Although Section 1407 does not specify criteria for selecting a transferee forum, the predominant goal is to find a court that will advance "the convenience of the parties and will promote the just and efficient conduct" of the transferred cases. To that end, the Panel has generally favored districts in which a number of constituent cases are pending. See, e.g., 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3864 (2007); David H. Herr, *Multidistrict Litigation Manual*, § 6 (2016). The Panel has also favored courts that are convenient and accessible, have favorable docket conditions, and districts for which the parties have stated a preference. See, e.g., Wright, Miller & Cooper, supra at § 3864; Herr, supra at § 6. In the context of this litigation, the district that best satisfies these criteria is the Central District of California.

For the above reasons, Moving Plaintiff requests the Actions and tag-along cases be transferred and consolidated before the Honorable John A. Kronstadt, United States District Judge for the Central District of California.

### C.  Alternatively, the Northern District of Georgia Is A Suitable Venue for the MDL

Alternatively, Moving Plaintiff requests the Panel transfer the case to the Northern District of Georgia. Many of the same considerations which make the Central District of

California a suitable venue are also true of the Northern District of Georgia. The Northern District of Georgia currently has four ParaGard cases pending. At the time of filing this Motion, there are four (4) MDLs pending in the Northern District of Georgia spread among the sixteen (16) District Judges housed there.

The Northern District of Georgia is also a convenient forum. The Northern District of Georgia is a convenient venue equipped with the busiest airport in the United States, is a hub of major airlines, and there are scores of hotels nearby the courthouse. Additionally, the Northern District of Georgia may be more convenient for the Defendants headquartered on the East Coast. The Atlanta Division of the Northern District of Georgia is, notably, one of the most diverse in the United States and would also provide a diverse jury pool representative of the country.

Moving Plaintiff further submits that it would be more appropriate for any MDL in these matters to be handled by one of the several other judges in the Northern District of Georgia who have not previously been assigned an MDL. While MDL experience has been a persuasive factor in selecting an MDL court, providing more qualified and capable jurists the opportunity to gain valuable MDL experience is likewise beneficial. *See, e.g.*, Transfer Order entered in *In re Atrium Medical Corp. C-Qur Mesh Prods. Liab. Litig.*, MDL 2753 (J.P.M.L.2016) ("[W]e are selecting a jurist with the willingness and ability to handle this litigation, but who has not yet had the opportunity to preside over an MDL.").

There are several Judges in the Northern District of Georgia who are well-qualified and capable of handling an MDL in these matters, who could effectively and efficiently handle any MDL. The Hon. Leigh Martin May of the Northern District of Georgia is a very experienced jurist already presiding over one the fifty-five cases pending in district courts: *Rodrigues v. Teva Pharmaceuticals et al,* Case: 1:20-cv-03945. Judge May is well-qualified to receive this MDL,

13

and as this product deals with women's health, Plaintiffs posit that the best judge to handle this MDL may be a woman. Appointed to the Northern District of Georgia bench in 2014, Judge May has extensive experience presiding over complex actions and specialized in product liability cases in private practice prior to ascending to the bench, but she has not yet handled an MDL.[2] Moving Plaintiff also submits that any of the other Northern District of Georgia Judges not currently handling an MDL, and who have yet to have an opportunity to preside over an MDL,[3] would also be well-suited to handle this MDL.

### D. Alternatively, the Western District of Missouri Is Also A Suitable Venue for the MDL

Alternatively, the Western District of Missouri is also a suitable venue for this MDL. The Western District of Missouri already has four (4) cases pending. While Kansas City, Missouri may not be as convenient as Los Angeles, California or Atlanta, Georgia, it is still a major city in the United States. In the age of modern electronics, video conferencing, "in the cloud" document repositories, and national plaintiffs' and defense counsel law firms, the geographic proximity has become increasingly less important. Further, currently there are ParaGard cases before the Honorable Stephen R. Bough in the Western District of Missouri. Judge Bough is an experienced jurist with MDL experience and favorable docket conditions. Judge Bough is currently presiding over a smaller MDL case load, MDL 2936, *In re: Smitty's/CAM2 303 Tractor Hydraulic Fluid*

---

[2] By way of example, and not exhaustive, only: *Fred Landress et al v. C.R. Bard, Inc. et al*, Case No. 1:15-cv-02672- (medical device product liability); *Pamela Wells v. C.R. Bard, Inc. et al*, Case No. 1:19-cv-04016- (medical device product liability); *Jeffery Lee Steward v. C.R. Bard, Inc. et al,* Case No. 1:19-cv-04005 (medical device product liability).

[3] In addition to Judge May, the following Northern District of Georgia judges have not yet had opportunity to preside over an MDL: Hon. Mark H. Cohen; Hon. Steve C. Jones; Hon. Eleanor L. Ross; and Hon. Amy Totenberg.

*Marketing, Sales Practices and Products Liability Litigation* and it is the understanding that he would be agreeable to assignment of another MDL.

Given these Courts' demonstrated ability to adjudicate complex mass tort litigation, Moving Plaintiff urges the Panel send the case to one of the three jurisdictions detailed above.

## III.   CONCLUSION

For the foregoing reasons, Moving Plaintiff respectfully requests that the Panel transfer the ParaGard cases, listed in the attached Schedule of Actions and tag-along cases , to the United States District Court for the Central District of California, or in the alternative the Northern District of Georgia or Western District of Missouri, for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407.

Dated: September 24, 2020        Respectfully submitted,

By: /s/ *Lauren A. Welling*
Lauren A. Welling, Esq. (Car Bar No. 291813)
lwelling@thesandersfirm.com
Timothy M. Clark, Esq. (CA Bar No. 284447)
tclark@thesandersfirm.com
**SANDERS PHILLIPS GROSSMAN, LLC**
16755 Von Karman Ave., Suite 200
Irvine, CA 92606
Tel: (516) 741-5600
Fax: (213) 477-2860

Randi Kassan, Esq.
rkassan@thesandersfirm.com
**SANDERS PHILLIPS GROSSMAN, LLC**
100 Garden City Plaza, Suite 500
Garden City, NY 11530
P: (516) 741-5600
F: (516) 741-0128

*Counsel for Moving Plaintiff*